UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

PAMELA CHATAGNIER,

v.

THE CENTER FOR PEDIATRIC AND
ADOLESCENT MEDICINE, L.L.C.,

---

CASE NO. 18-cv-_____

JUDGE _____

MAGISTRATE JUDGE _____

**JURY TRIAL DEMANDED ON
SPECIFIC ISSUES**

## **COMPLAINT**

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

## **PRELIMINARY STATEMENT**

1. Pamela Chatagnier is a deaf individual who communicates primarily in American Sign Language ("ASL"). Ms. Chatagnier is not fully proficient in English, and has difficulty reading complex terminology and documents in written English. For several years Ms. Chatagner's minor son has been a patient at The Center for Pediatric and Adolescent Medicine. This action concerns the lack of equal access and accommodations for Ms. Chatagnier at The Center for Pediatric and Adolescent Medicine. The staff and employees at The Center for Pediatric and Adolescent Medicine have failed to provide Ms. Chatagnier with the necessary interpretation and communication services, and thereby failed to provide her equal access afforded to hearing persons in a medical setting.

2. ASL and English are two completely distinct languages that are mutually unintelligible. They are as different from one another as English is from Russian, for example.

3. Many deaf individuals, including Ms. Chatagnier, do not have full knowledge of written English. Indeed, the median reading comprehension level in English of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Further, while a hearing person could easily ask an employee or staff member to explain an unknown medical word or phrase, a Deaf person is unable to ask for assistance in understanding unknown English words without the aid of a sign language interpreter or other auxiliary aid.

4. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for

direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips.

5. Moreover, passing shorthand notes and/or communicating strictly with hand gestures is not equivalent to the use of language to communicate information, particularly that which is complex or pertains to medical care.

6. Video Remote Interpreting (VRI) is a videotelecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

7. Ms. Chatagnier brings this lawsuit seeking compensatory and nominal damages, declaratory relief, and attorneys' fees and costs to redress Defendant' unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116.  With regards to Ms. Chatagnier's request for nominal damages, it is Ms. Chatagnier's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in her favor against Defendant, regardless of the amount, would deter Defendant from discriminating against deaf individuals in the future.

## THE PARTIES

8. Plaintiff Pamela Chatagner (hereinafter "Ms. Chatagnier") brings this action and is an individual residing in Thibodeaux, Louisiana. Ms. Chatagnier communicates primarily in American Sign Language and is substantially limited in the major life activities of hearing and speaking and is a qualified person with a disability within the meaning of the RA and Section 1557.

9. Defendant THE CENTER FOR PEDIATRIC AND ADOLESCENT MEDICINE, L.L.C. is a limited liability company organized in Louisiana, with the domicile of 604 N. Acadia Road, Suite 200, Thibodaux, LA 70301. Defendant owns, leases, and/or operates The Center for Peidatric and Adolescent Medicine, which is located at the same address. Defendant is operating a place of public accommodation under federal antidiscrimination laws and are recipients of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Section 1557 and the RA.

## JURISDICTION & VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Ms. Chatagnier's claims arising under federal law.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant committed discriminatory acts within the jurisdiction of this District and a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

12. Ms. Chatagnier is a deaf individual who communicates primarily through ASL. While Ms. Chatagner can read and communicate basic information through handwriting or text messages, any communication involving complex topics, especially medical topics, necessitates the use of ASL.

13. Specifically, Ms. Chatagnier requires auxiliary aids and services to communicate in an equivalent manner to non-disabled, hearing persons, in a medical setting. Ms. Chatagnier requires a sign language interpreter in order to understand doctors and nurses and to assist her with asking questions in ASL about the meaning of complex documents that are written in English and documents that use advanced terminology.

14. Ms. Chatagnier has knowledge of some written English. However, she is not fully proficient in comprehending written English and cannot participate in long discussions in English. The entirety of Ms. Chatagnier's education occurred in an ASL-dominant environment where English was not the primary language.

15. Over the last four years, Ms. Chatagner has taken her son to numerous appointments – possibly over twenty appointments to see Dr. Kenneth J. Cruse, MD.

16. At each of these appointments Ms. Chatagner has needed a sign language interpreter to communicate with the nurses and her son's doctor. Instead of providing her with an interpreter, the healthcare providers attempted to communicate by handwriting notes.

17. Defendant did not supply a Video Remote Interpreting device to communicate with Ms. Chatagner. Instead, at times Ms. Chatagner would call a nurse on her Video Phone after she had already left the facility in an attempt to utilize the free relay-call system that is provided by the FCC.

18. However, when the nurse would call Ms. Chatagner through the relay-call system, it would not provide Ms. Chatagnier with an equivalent opportunity to participate in her son's healthcare. For one thing, the conversation would not occur contemporaneously with the examination of her son. Additionally, the conversation would occur while Ms. Chatagner were in different rooms and, therefore, Ms. Chatagner had limited ability to understand what areas of the body the nurse was speaking about.

19. Indeed, while hearing parents would be able to discuss the nature of their child's ailment/issues in person with the doctorwhile examining the troubled area, Ms. Chatagner was not provided with an equal opportunity to understand the information that was being conveyed.

20. For approximately twelve or more visits, there is a segment of the medical records that says "Interpreter services needed?" Instead of marking that Ms. Chatagner needed an interpreter, Defendant noted "N/A."

21. However, a medical record from Defendant dated November 11, 2014 states "Interpreter services needed? Yes. Interpreter services provided? Yes." However, Defendant never once provided Ms. Chatagner with an interpreter.

22. Therefore, as of November 11, 2014, Defendant had explicit knowledge and notice that Ms. Chatagnier needed interpreting services.

23. Therefore, on each occasion after November 11, 2014 that it failed to provide interpreting services, Defendant committed intentional discrimination.

24. The methods of communication used by Defendant to communicate with Ms. Chatagnier—handwritten notes, and through the telephone—were not appropriate under the circumstances and did not provide Ms. Chatagnier with communication equivalent to that provided to hearing persons. These methods of communication did not allow her to fully understand and discuss her son's condition, his treatment options, the medications he was taking, likely outcomes, or to alternatives to prescription medications.

25. Ms. Chatagnier has been unable to fully understand the nature, scope, and seriousness of her son's conditions.

26. Upon information and belief, over the course of her son's treatment, Ms. Chatagnier was given documents to sign. However, Defendant did not provide Ms. Chatagnier with a sign language interpreter to translate these documents for Ms. Chatagnier. Without the aid of a qualified sign language interpreter, Ms. Chatagnier was not able to fully understand the content of these documents.

27. Ms. Chatagnier does not know what information she missed when the staff tried to communicate via handwriting notes and her son.

28. Defendant' failure to provide Ms. Chatagnier with effective auxiliary aids and services caused Ms. Chatagnier to experience fear, anxiety, emotional distress, loneliness, isolation, segregation, frustration, invasion of her civil rights, denial of self-determination, mental anguish, embarrassment, inconvenience, indignity, and/or humiliation.

29. Defendant, through their staff, employees, nurses, and/or doctors, knew their obligations under Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf, and to develop policies to promote compliance with these statutes.

30. Defendant, through their staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions of its staff created an unreasonable risk of causing Ms. Chatagnier greater levels of fear, anxiety, emotional distress, loneliness, isolation, segregation, frustration, invasion of her civil rights, denial of self-determination, mental anguish, embarrassment, inconvenience, indignity, and/or humiliation than a hearing person would be expected to experience.

31. The harm sustained by Ms. Chatagnier herein is the expected and foreseeable consequence of Defendant's failure to comply with the requirements and mandates of federal civil rights law. The statute and accompanying regulations exist to ensure that individuals with disabilities who have communication limitations will have equal access to places of public accommodations. When Defendant failed to adhere to their obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Chatagnier in this lawsuit.

32. Despite Defendant' explicit knowledge of its obligation to accommodate persons with disabilities—including individuals that are deaf—Defendant did not take adequate steps to ensure that they communicated with Ms. Chatagnier in a manner equivalent to hearing persons.

33. Defendant discriminated against Ms. Chatagnier with deliberate indifference to her disability and related communication needs.

34. Based on the facts alleged above, Defendant intentionally discriminated against Ms. Chatagnier.

35. Further, Defendant were purposeful in their choices, which is sufficient to constitute intentional discrimination under the RA and ACA.

36. The harm sustained by Ms. Chatagnier herein is the expected and foreseeable consequence of Defendant's failure to comply with the requirements and mandates of the RA and ACA. These statutes and accompanying regulations exist to ensure that those with communication limitations will have equal access to places of public accommodations. When Defendant failed to adhere to their obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Chatagnier in this lawsuit.

37. By and through Defendant's failure to make its healthcare services meaningfully accessible to individuals who are deaf, Defendant have committed disparate impact discrimination sufficient to state a claim for damages under the RA and ACA.

**CLAIM 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

38. Ms. Chatagnier repeats and realleges paragraphs 1-37 in support of this claim.

39. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant' conduct.

40. At all times relevant to this action, the United States Department of Health and

Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendant' conduct.

41. At all times relevant to this action, Ms. Chatagnier had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

42. At all times relevant to this action, Defendant offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

43. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

44. Defendant discriminated against Ms. Chatagnier, solely on the basis of disability, by denying her equal access to the services, programs, and benefits the Defendant offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure communication equivalent to that provided to hearing persons, in violation of 29 U.S.C. § 794.

45. Defendant also discriminated against Ms. Chatagnier, solely on the basis of disability, by denying her reasonable accommodation requests, in violation of 29 U.S.C. § 794.

46. Ms. Chatagnier is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant' discriminatory conduct and deliberate indifference alleged herein, pursuant to 29 U.S.C. § 794(a).

47. Ms. Chatagnier is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

### CLAIM 2: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

48. Ms. Chatagnier repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

49. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect, and applied to Defendant' conduct.

50. At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

51. At all times relevant to this action, Ms. Chatagnier had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

52. At all times relevant to this action, Ms. Chatagnier's primary language for communication was American Sign Language, and not English; Ms. Chatagnier has limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

53. At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant are operating health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

54. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC §

18116.

55. Defendant discriminated against Ms. Chatagnier solely on the basis of disability, by denying her equal access to the services, programs, and benefits that Defendant offered to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

56. Defendant discriminated against Ms. Chatagnier by failing to ensure equivalent communication to that provided hearing persons, through its refusal to provide qualified sign language interpreters on-site and/or through VRI machines.

57. Defendant discriminated against Ms. Chatagnier by denying her requests for reasonable accommodations.

58. Ms. Chatagnier is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant' discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

59. Ms. Chatagnier is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Ms. Chatagnier respectfully prays that this Court grant the following relief against Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant' policies, procedures, and practices subjected Ms. Chatagnier to unlawful discrimination in violation of the RA and ACA;

B. Award to Ms. Chatagnier:

   i. Compensatory and nominal damages pursuant to the RA and ACA;

    ii.    Reasonable costs and attorneys' fees pursuant to the RA and ACA;

    iii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv.    Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Ms. Chatagnier demands trial by jury on the issues of (1) the injuries she suffered as a result of Defendant's discriminatory conduct; and (2) the quantum of damages that should be awarded.

Dated: November 27, 2018

Respectfully Submitted,

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:    /s/ Andrew D. Bizer
        Andrew D. Bizer